NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HARROLL INGRAM,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2015-3110

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-14-0725-W-1.

---

Decided: August 10, 2015

---

HARROLL INGRAM, Sanford, FL, pro se.

RYAN MAJERUS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

---

Before LOURIE, WALLACH, and HUGHES, *Circuit Judges.*

PER CURIAM.

Harroll Ingram ("Ingram") appeals from the final decision of the Merit Systems Protection Board ("the Board") denying his petition for review. *See Ingram v. Dep't of the Army*, No. AT-1221-14-0725-W-1 (M.S.P.B. Feb. 3, 2015) ("*Final Order*"); (M.S.P.B. Sept. 24, 2014) ("*Initial Decision*"). Because the Board did not err in denying Ingram's petition for review, we *affirm*.

## BACKGROUND

Ingram was employed by the Army as a Computer Engineer/Systems Engineer in the Program Executive Office for Simulation, Training, and Instrumentation, in Orlando, Florida. Ingram filed an individual right of action ("IRA") claim at the Office of Special Counsel ("OSC"), concerning his disclosure of a superior's intention to proceed with a controversial work presentation despite a contrary recommendation from the Army's legal department. In July 2011, the Board found that Ingram was entitled to corrective action from the Army for making a protected disclosure under the Whistleblower Protection Act ("WPA"). *See Ingram v. Dep't of the Army*, 116 M.S.P.R. 525, 533 (2011). The Army undertook the required corrective action, and the Board subsequently found that the agency complied with its final order. *See* Resp't's App. 34.

In May 2014, Ingram filed a second IRA claim, seeking corrective action at OSC, and on appeal at the Board, the Administrative Judge ("AJ") denied Ingram's request for corrective action. *Initial Decision* at 8. Ingram identified a number of alleged personnel actions that he claimed were taken in retaliation for his prior whistleblowing and IRA appeal:

1.   The [Army] failed to comply with the prior Board order in MSPB Docket No. AT-1221-09-0874-B-1 by not increasing his perfor-

mance evaluation score to the highest possible rating;

2. The [Army] created a hostile work environment;

3. Lieutenant Colonel Wilson Ariza [("Ariza")] scheduled [Ingram] to work 20 hours of overtime and refused to agree to give him either overtime pay or compensatory overtime for the period;

4. [Ariza] did not permit [Ingram] to take a hotel room for a local conference so that he would not have to drive home late, while affording that courtesy to others;

5. [Ariza] did not respond to [Ingram's] e-mails;

6. [Ariza] recommended the issuance of a "letter of caution" for leaving a conference call early even though the colonel knew that [Ingram] needed to use the bathroom;

7. Ms. Fabiola Hoffman [("Hoffman")] failed to include [Ingram] in technical meetings denying [him] the opportunity to use his job skills;

8. Ms. Hoffman did not allow [Ingram] to serve as a technical representative on Medical Simulation Training Center (MSTC) Source Selection activities;

9. Ms. Hoffman brought [Ingram's] work to [Ingram's] supervisor for review;

10. Ms. Hoffman removed [Ingram] as a "Government Inspector of Simulators;"

11. Mr. Tony Marton [("Marton")] failed to take appropriate action to remedy Ms. Hoffman's disrespectful and improper actions; and

      12.   Mr. Marton issued [Ingram] a "letter of caution" for leaving a conference call early even though [Ingram] asserted that he needed to use the bathroom.

*Id.* at 3. The AJ then analyzed each claim, and concluded that Ingram failed to show by preponderant evidence that he suffered a personnel action within the meaning of the WPA. *Id.* at 8.

With respect to claim (1), the AJ found that "[n]oncompliance with a final Board order is not an enumerated personnel action within the meaning of the WPA," and, in addition, the AJ found that the Army was in compliance with the order. *Id.* at 3–4. The AJ then found that Ingram failed to provide "specifics" for his hostile work environment claim (2), and failed to present evidence to substantiate the allegations relating to Ariza's actions in claims (3), (4), and (5). *Id.* at 4–5.

The AJ then found that Ariza's letter of caution in claim (6) "merely admonishes [Ingram] to behave in a professional manner and treat others with respect." *Id.* at 6. As a result, the AJ found that claim (6) did not constitute a personnel action within the meaning of 5 U.S.C. § 2302(a)(2)(A) because the letter did not constitute a formal disciplinary event. *Id.* The AJ also found that claim (12), relating to Marton's letter of caution, was the same letter of caution as in claim (6), and thus was also not a personnel action within the meaning of the WPA. *Id.* at 8.

Turning to claims (7)–(11), the AJ found that Ingram failed to show by preponderant evidence that he suffered a personnel action as a result of the actions of Hoffman or Ingram's supervisor, Marton. *Id.* at 7. The AJ acknowledged that the Army appointed an investigating officer to examine claims (7)–(10) and that the investigator found that the claims could not be substantiated. *Id.* The AJ concluded, however, that he could not rely on the conclu-

sory statements of the investigator. *Id.* Nonetheless, according to the AJ, Ingram "failed to present evidence which demonstrates that he suffered a change in his working conditions" and "he [relied] on bare factual allegations without providing proof to support those claims." *Id.*

Because the AJ found that Ingram failed to show that he suffered a personnel action within the meaning of the WPA, he did not reach the issue of whether the Army took those actions in retaliation for Ingram's whistleblowing activity. *Id.* at 8. Ingram then filed a petition for review of the initial decision.

The full Board denied the petition for review and, as modified by the final order, affirmed the initial decision. *Final Order* at 2. The Board found that the applicable law and evidence of record supported "the [AJ's] findings that [Ingram] failed to show by preponderant evidence that he suffered a personnel action within the meaning of the WPA, and, as a result, there was no need to reach the issue of whether the [Army] took those actions in retaliation for his whistleblowing activity." *Id.* at 3.

Ingram argued that the AJ failed to substantively address his claims regarding "a significant change in his duties, position removal attempts without cause, and denial of a promotion opportunity." *Id.* at 4. Ingram also alleged that he was issued a letter of reprimand; that he was refused overtime pay; and that the Army took prohibited personnel actions against him in retaliation for his alleged whistleblowing. *Id.* The Board limited its analysis to those allegations explicitly identified in Ingram's OSC complaint and addressed by the AJ. *Id.* The Board considered Ingram's allegations of a reduction in duties and a refusal of overtime pay, but found for each allegation that Ingram had either presented "limited probative evidence," *id.*, or "no evidence in the record," *id.* at 5. The Board rejected Ingram's claims and noted that it

"may only consider those disclosures of information and personnel actions that [Ingram] raised before OSC." *Id.* (citing *Mason v. Dep't of Homeland Sec.*, 116 M.S.P.R. 135, ¶ 8 (2011)).

With respect to the "letter of reprimand," the Board found that Ingram never received a "letter of reprimand," but instead received a "letter of caution," as concluded by the AJ in the initial decision. *Id.* at 5. The Board found that the AJ "thoroughly addressed the letter of caution and found that the letter only admonishes [Ingram] to behave in a professional manner and treat others with respect." *Id.* Thus, because the letter did "not state that [Ingram] did anything wrong, or restrict behavior in any way," the Board found that it did not constitute a personnel action within the meaning of the WPA. *Id.* at 5–6.

The Board, however, did find that the AJ had failed to consider Ingram's claim "that his supervisors created a Chief Engineer position on his team and then, without competition, filled that position with another individual from a different team." *Id.* at 6. Nonetheless, the Board found that Ingram failed to raise this claim in his OSC complaint, and thus the "claim was not properly before the Board." *Id.* (citing *Mason*, 116 M.S.P.R. at ¶ 8).

As a final matter, Ingram argued that the AJ incorrectly granted a motion by the Army to strike e-mails obtained by Ingram during discovery on the grounds of attorney-client privilege. The Board concluded that under 5 C.F.R. § 1201.41, the AJ has substantial discretion to make rulings on motions, and the Board found that Ingram had "shown no basis upon which to disturb the [AJ's] ruling." *Id.* at 6.

Ingram appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a Board decision is limited. We may only set aside the Board's decision if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). We must set aside a Board decision "unsupported by substantial evidence when it lacks such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (internal quotation marks and citations omitted).

Ingram argues that the Board: (1) failed to substantively consider certain of his OSC allegations; (2) erred by relying on the self-serving results of an Army-led investigation; (3) erred in its characterization of the reprimand letter; and (4) erroneously granted the Army's motion to strike certain e-mails during discovery. The government responds that the Board addressed each of Ingram's allegations and correctly reviewed the initial decision for substantial evidence.

We agree with the government that the Board did not err in denying Ingram's request for corrective action. As a result, the Board did not err in denying Ingram's petition for review. The Board considered each of Ingram's allegations and all of the relevant facts before denying Ingram's request.

Ingram alleges that the Board failed to consider certain OSC allegations, and, in addition, Ingram specifically argues that the Board failed to consider evidence supporting his allegations concerning Hoffman's personnel actions. As we previously noted, the Board addressed Ingram's allegations against Hoffman, and it held that

Ingram "failed to present evidence" and "relied on bare factual allegations without providing proof to support his claims." *Final Order* at 4. Ingram fails to recite any additional evidence or allegations that were made before both OSC and the AJ that the Board failed to take into account. *See Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 526 (Fed. Cir. 1992) ("[T]he administrative judge justifiably refused to consider an issue that . . . had not properly [been] raised before the Special Counsel.")

Ingram also argues that the AJ and the Board erroneously relied on the Army-led investigation of his allegations against Hoffman. As previously noted, however, the AJ expressly declined to consider the Army's investigation, but nevertheless concluded that Ingram had failed to meet his burden of proof as to the allegations relating to Hoffman. *Initial Decision* at 7. Similarly, the Board did not rely on the results of the investigation, and instead concluded that Ingram had not suffered a personnel action because of the "limited probative evidence" presented on the issue. *Final Order* at 4. Thus, Ingram has failed to demonstrate that the AJ and Board incorrectly relied on the Army-led investigation.

Ingram's arguments with respect to the "letter of caution" also fail to identify an error in the Board's analysis. The AJ held that the letter could not constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A) because the letter was not a formal disciplinary event, and, in any event, the letter did not rise to the level of a threatened personnel action under § 2302(b)(8). *Initial Decision* at 6. The Board noted the AJ's analysis and agreed that the letter could not constitute a personnel action under the WPA. *Final Order* at 5–6. The Board thus reasonably concluded that the letter did not amount to a threatened personnel action, and we decline to reweigh the evidence on appeal. *See, e.g., Henry v. Dep't of the Navy*, 902 F.2d 949, 951 (Fed. Cir. 1990) ("It is not for this court to reweigh the evidence before the Board.").

Finally, Ingram challenges the Board's decision affirming the AJ's order to strike e-mails obtained by Ingram during discovery because they were attorney-client privileged. As the Board reasoned, 5 C.F.R. § 1201.41 accords agencies substantial discretion to rule on motions, and Ingram fails to identify any error in the Board's conclusion that the AJ did not abuse its discretion.

Because the Board's decision that Ingram did not allege a personnel action under the WPA is supported by substantial evidence, the Board did not err in denying Ingram's petition for review. We have considered Ingram's remaining arguments and conclude that they are without merit. For the foregoing reasons, the decision of the Board is affirmed.

### AFFIRMED

COSTS

No costs.